# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2013 WY 11

*October Term, A.D. 2012*

*January 30, 2013*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

D-12-0007

JODY MONTGOMERY VANNOY,
WSB #5-2345,

Respondent.

## ORDER OF DISBARMENT

[¶1]    **This matter** came before the Court upon a "Report & Recommendation for Order of Disbarment," filed herein January 2, 2013 by the Board of Professional Responsibility for the Wyoming State Bar.   The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, the Affidavit of Costs and Expenses, and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report & Recommendation for Order of Disbarment, a copy of which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that, effective this date, the Respondent, Jody Montgomery Vannoy, shall be, and hereby is, disbarred from the practice of law in this state; and it is further

[¶4]    **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Jody Montgomery Vannoy, shall reimburse the Wyoming State Bar the amount of $3,286.03, representing the costs incurred in handling this matter, as well as pay an administrative fee of $500.00.   Respondent shall pay the total amount of

$3,786.03 to the Clerk of the Board of Professional Responsibility on or before April 1, 2013; and it is further

[¶5]  **ORDERED** that, pursuant to Section 4(c) of the Disciplinary Code for the Wyoming State Bar, Jody Montgomery Vannoy shall make restitution to Sergei S. Yates in the amount of any and all judgments; and it is further

[¶6]  **ORDERED** that Jody Montgomery Vannoy comply with the November 16, 2012 Resolution Order issued by the Committee on Resolution of Fee Disputes.  That order required Respondent to refund the unearned portion of a retainer to a client in the amount of $5,101.67; and it is further

[¶7]  **ORDERED** that Respondent shall comply with Section 22 of the Disciplinary Code for the Wyoming State Bar.  That Section governs the duties of disbarred and suspended attorneys; and it is further

[¶8]  **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Disbarment, along with the incorporated Report & Recommendation for Order of Disbarment, shall be published in the Pacific Reporter; and it is further

[¶9]  **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the Report & Recommendation for Order of Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶10]  **ORDERED** that the Clerk of this Court cause a copy of the Order of Disbarment to be served upon the Respondent, Jody Montgomery Vannoy; and it is further

[¶11]  **ORDERED** that the Clerk of this Court transmit a copy of this Order of Disbarment to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

[¶12]  **DATED** this 30th day of January, 2013.

**BY THE COURT:***

/s/

**MARILYN S. KITE**
**Chief Justice**

*Justice Voigt took no part in the consideration of this matter.  Retired Justice Michael Golden participated by assignment.

# BEFORE THE SUPREME COURT

# OF THE STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JAN - 2 2013

CAROL THOMPSON, CLERK
_____
by CHIEF DEPUTY

*In the matter of*           )
*JODY MONTGOMERY VANNOY,*    )
*WSB # 5-2345,*            )      *WSB Nos. 2011-67 and 2011-145(b)*
                      )
*Respondent.*            )

## REPORT & RECOMMENDATION FOR ORDER OF DISBARMENT

THIS MATTER having come before the Board of Professional Responsibility for a sanction hearing on the 21st day of December, 2012, and the Wyoming State Bar appearing by and through Mark Gifford, Bar Counsel; and Respondent appearing not; and a quorum of the Board having heard the testimony and reviewed the exhibits received into evidence at the hearing, FINDS, CONCLUDES and RECOMMENDS as follows:

### FINDINGS OF FACT

1. As more fully set forth below, on August 16, 2012, the Honorable John G. Fenn, District Judge, entered judgment against Respondent and in a civil matter in the amount of $695,565.31.

2. Given the nature of Judge Fenn's findings, on August 21, 2012, Bar Counsel filed a petition for Respondent's interim suspension.

3. On September 12, 2012, the Wyoming Supreme Court issued an Order of Interim Suspension pending resolution of a formal charge against Respondent.

4. Pursuant to Section 11(e) of the Disciplinary Code, on September 24, 2012, a copy of the formal charge in this matter was sent to Respondent by certified mail addressed to 1638 Alger Avenue, P.O. Box 3220, Cody, WY 82414-3220, which was Respondent's last known address as shown in the records of the Wyoming State Bar.

5. On October 16, 2012, the certified mail envelope containing the formal charge was returned "unclaimed."

6. Respondent did not serve an answer to the formal charge as required by Section 22(f) of the Disciplinary Code.

7. On October 24, 2012, Bar Counsel filed an application for entry of default. The clerk of the Board properly entered the default of Respondent for failure to answer the formal charge the same day. Also on October 24, 2012, Bar Counsel filed a request for setting of a sanction hearing in the above-captioned matter, and filed a motion for order to show cause with the Wyoming Supreme Court for Respondent's failure to file an affidavit showing compliance with Disciplinary Code Section 22(f) as required by the Order of Interim Suspension. Copies of each of the foregoing documents were sent to Respondent by e-mail and United States mail on October 24, 2012.

8. On November 13, 2012, the Wyoming Supreme Court issued an Order to Show Cause Why Respondent Should Not Be Held in Contempt of Court. The Order referred to Respondent's failure to file the affidavit required by Section 22(f), and directed Respondent, on or before December 4, 2012, to show cause why she should not be held in contempt of court for failing to comply with Section 22(f).

9. On November 15, 2012, Respondent filed with the Wyoming Supreme Court an affidavit stating in relevant part, "1. I have fully complied with the provisions of §22 of the Dis-

2

ciplinary Code and the Code's Order. 2. The address where communications hereafter [sic] is as follows: Post Office Box 3220, Cody, WY, 82414."

10. On November 23, 2012, Bar Counsel received a letter from Respondent dated November 20, 2012, in which Respondent requested that the motion for order to show cause be withdrawn. The letter included the following:

> I had begun winding my practice down in January 2008 to start a new business. Approximately 90% of any legal services I provided since that time were pro bono. I had three (3) pending matters in 2012, two of which were resolved prior to your suspension/disbarment proceedings against me. The third was a Living Will (again pro bono) for a friend; she has since advised that she would like to change what we had discussed and which I prepared for the Wills. I advised her that due to the nature of the Disciplinary proceedings against me, I could not make any changes unless you so approved.

Respondent's letter of November 20, 2012, was the only communication of any form from Respondent since the formal charge was filed.

11. On November 28, 2012, Bar Counsel wrote to Respondent at P.O. Box 3220, Cody, Wyoming, enclosing with his letter copies of the formal charge, the entry of default and the order setting the sanction hearing for December 21, 2012. In the letter, Bar Counsel inquired of Respondent, "I would appreciate your prompt advice as to whether you are planning to attend the December 21, 2012, sanction hearing."

12. Bar Counsel also caused a summons to be issued for personal service upon Respondent, requiring Respondent to appear at the December 21, 2012, sanction hearing. Bar Counsel hired a process server, who after considerable efforts to find Respondent, served Respondent with the summons and a copy of the order setting sanction hearing at approximately 2:30 p.m. on Tuesday, December 18, 2012.

3

13. Approximately one (1) hour after Respondent was served with the summons, Bar Counsel received an email from Respondent to which was attached (1) a letter to Bar Counsel from Respondent dated December 18, 2012; (2) a letter to Bar Counsel from Respondent dated December 7, 2012; and (3) an "Amended Affidavit" of compliance with § 22 of the Disciplinary Code. This email and the attachments were the first communications Bar Counsel had received from Respondent since Respondent's November 20, 2012, letter summarized above.

14. In Respondent's December 18, 2012, letter, Respondent requested that the December 21, 2012, sanction hearing be postponed or that Respondent be allowed to appear telephonically. The letter and attachments indicate that Respondent received Bar Counsel's November 28, 2012, letter by December 7 at the latest. Respondent did not respond to the letter or otherwise communicate with Bar Counsel until one hour after she was served with the summons to appear at the December 21, 2012, hearing.

15. The Board of Professional Responsibility denied Respondent's request for postponement of the sanction hearing, but granted her request to attend the hearing by phone.

16. As a result of Respondent's failure to answer or otherwise defend the formal charge, the following allegations of the formal charge are deemed to have been conclusively established:

17. Respondent has been licensed to practice law in the State of Wyoming since 1986, and has maintained, and continues to maintain, a practice in Cody, Wyoming.

18. In May of 2011, a complaint was initiated against Respondent (WSB No. 2011-067) by Emblem, Wyoming attorney Robert J. DiLorenzo. Mr. DiLorenzo was representing Sergei S. Yates in a civil action in the Fifth Judicial District Court, Park County, Wyoming,

4

arising from alleged improprieties by Respondent in the performance of the her duties as Trustee of the Sergei S. Yates 2006 Trust, described in more detail below.

19. In September of 2011, a new complaint was initiated against Respondent (WSB No. 2011-145(b) by Cody, Wyoming attorney Nick Beduhn, who had succeeded Mr. DiLorenzo as counsel for Mr. Yates. Mr. Beduhn's complaint described misconduct and improprieties similar to those alleged in Mr. DiLorenzo's earlier complaint. Investigation of both complaints was put on hold pursuant to Section 13(a) of the Disciplinary Code while the underlying litigation proceeded.

20. The Sergei S. Yates 2006 Trust Agreement was originally created on June 26, 2006. Respondent was the Trustee of the Trust, which was created to hold certain assets passing to Yates as the result of an inheritance from the estate of Yates's adoptive mother, who was killed in an airplane crash in 2000. The Trust, which is construed, regulated and governed by the laws of the State of New York, was initially funded in December 2007 with $50,000.00 and received an additional $1,273,131.85 in July 2008. Those contributions were initially placed with Bernstein Global Wealth Management.

21. The 2008 Trust federal fiduciary income tax return (Form 1041) indicated that for the relevant tax period the Trust had total income of $5,528, consisting solely of interest income. The 2008 Trust Form 1041 also indicated that for the relevant tax period the Trust paid no fiduciary fees.

22. The 2009 Trust Form 1041 indicated that for the relevant tax period the Trust had total income of $811, consisting of $210 of interest income, $382 of ordinary dividends, and $219 of capital gain income. The 2009 Trust Form 1041 for the Trust also indicated that for the relevant tax period the Trust paid out fiduciary fees of $1,728.

·5

23. Commencing on June 30, 2010, and continuing through the filing of a civil action against Respondent, Yates, through his advisors, repeatedly requested from the Respondent a statement of the current assets of the Trust, such as a statement of the Bernstein account. Respondent had not provided a statement of the Trust assets to Yates or Yates' advisors since the funding of the Trust.

24. Yates retained legal counsel to represent him with respect to possible claims against Respondent. In the course of the litigation which followed, Yates' attorneys retained the services of a CPA firm to review available records regarding Respondent's handling of Trust assets. The CPA firm eventually issued a report which indicated that from the $1,323,131.85 originally contributed to the Trust, transfers amounting to $384,999.00 were made to accounts in Respondent's name at Pinnacle Bank and First National Bank. Another $601,000 was transferred to a First National Bank account in the name of Respondent as Trustee for Yates; of this amount, $341,965.31 was transferred to various accounts held by Respondent, and $259,338.00 was transferred to accounts held by Yates at Pinnacle Bank and First National Bank. Another $50,000 was transferred to an account in Yates' name at Pinnacle Bank.

25. Thus, transfers of Trust assets totaling $726,964.31 ($384,999.00 plus $341,965.31) were made by Respondent to accounts owned by Respondent. Of that total, $21,399.00 was paid to Yates, leaving $705,565.31 paid to Respondent and applied to uses other than for Yates' benefit.

26. A total of $309,338.00 ($50,000.00 plus $259,338.00) in Trust assets was paid to Yates, in addition to the $21,399.00 paid to Yates from transfers Respondent first made to herself. Thus, of a total of $1,035,999.00 transferred by Respondent from Trust assets, just $330,737 was received by Yates.

6

27.    In October 2010, Yates brought suit against Respondent in the Fifth Judicial District Court, Park County, Wyoming, Civil Action No. 26306 (hereinafter, "the Lawsuit"). Yates sought an accounting by Respondent relating to her actions as Trustee. Yates alleged that Respondent had refused to provide any accounting despite repeated requests. The case was assigned to the Honorable John G. Fenn, District Judge.

28.    A bench trial was held May 23 and 24, 2012, which was preceded by what Judge Fenn would describe, in his Findings of Fact, Conclusions of Law and Judgment as "numerous pretrial hearings and sanctions relating to Ms. Vannoy's repeated stonewalling, her disregard of the discovery process and Court orders, and her lack of cooperation with her counsel." In support of this statement, Judge Fenn cited the following:

a.    A hearing was held on January 21, 2011, at which Judge Fenn heard arguments from Counsel and examined the record, which included Yates's numerous, unsuccessful attempts to obtain information from Respondent. Judge Fenn ordered Respondent to provide an accounting on or before February 21, 2011. Judge Fenn further ordered that such accounting cover the period from January 1, 2008 to date, that it conform with generally accepted accounting practices (including balance sheets, general ledgers, income and expenses, distributions, transfers of funds and other charges against the trust assets), and that Respondent provide an affidavit vouching for its accuracy. At the same hearing, Judge Fenn appointed a Co-Trustee, and ordered Respondent to serve her W.C.C.P. Rule 26 initial disclosures within 30 days of the completion of the accounting.

b.    On February 23, 2011, Respondent's counsel faxed a "Report Regarding Status of Accounting" informing Judge Fenn that the accounting was progressing but not

7

complete. Respondent represented that an accountant had been engaged to assist in the accounting and that it was "anticipated that the accounting will be completed by the 10th day of March, 2011."

c. On March 10, 2011, Respondent's counsel submitted a "Trustee's Submission of Status Resport Regarding Accounting to Date" in which Respondent again informed Judge Fenn that the accounting was not complete but that it was "moving along as quickly as possible."

d. On May 18, 2011, Yates filed a "Motion for Order to Show Cause and for Sanctions and Request for Expedited Hearing" asking Respondent to explain the failure to complete the accounting that had been ordered by Judge Fenn. Yates advised that his own investigation indicated that $750,000.00 was unaccounted for and had been misappropriated by Respondent.

e. Following a hearing held July 14, 2011, Judge Fenn ordered Respondent to provide all documentation of her personal and business finances, awarded Yates his attorney's fees, and approved the parties' stipulation that Respondent immediately resign as Trustee.

f. Another hearing was held October 21, 2011, addressing a number of motions arising from Respondent's refusal to provide an accounting and comply with Judge Fenn's previous orders. Judge Fenn held Respondent in contempt of court, ordered her to complete an accounting, and announced that Respondent's failure to do so by December 5, 2011, would result in her arrest. Judge Fenn enjoined Respondent from encumbering, transferring, mortgaging or selling certain real and personal property. Judge

8

Fenn awarded additional attorney fees to Yates, and allowed Yates to amend his complaint to bring additional claims against Respondent.

g. Respondent again failed to comply with Judge Fenn's orders, and on December 7, 2011, a warrant was issued for her arrest. Respondent was arrested and a hearing was held on December 8, 2011, at which Respondent was again held in contempt and Yates was awarded additional attorney fees. Respondent was released from custody based upon assurances that the accounting would be completed on or before January 10, 2012.

h. On February 24, 2012, a hearing was held at which Judge Fenn found that Respondent had again failed to comply with his previous orders. Judge Fenn entered a default against Respondent and ordered that the matter would proceed to trial for the sole purpose of determining Yates's damages.

29. Following a trial held May 23-24, 2012, on August 16, 2012, Judge Fenn issued his Findings of Fact, Conclusions of Law and Judgment. Judge Fenn found that of $1,039,758.26 dispersed from the trust, Yates received only $344,192.95. Judge Fenn found that Respondent "received and has failed to account for $695,565.31. The funds were commingled in part with several accounts of which [Respondent] was in charge, including [Respondent's] 'Law Office Account', a 'House Account', a 'Rental Account', [and] the 'Edward Montgomery Family Trust'."

30. Judge Fenn found "the actions of [Respondent] as trustee were fraudulent and intentionally deceptive," and entered judgment against Respondent and in favor of Yates in the amount of $695,565.31. In so ruling, Judge Fenn concluded:

9

Vannoy has breached her fiduciary duty as trustee for the Sergei S. Yates 2006 Trust Agreement, and has misappropriated, fraudulently conveyed or used for her personal benefit $695,565.31 of the Sergei S. Yates 2006 Trust Agreement. Further, Vannoy's actions were intentional, as she has continued to avoid reporting a proper and true accounting of the Trust.

31. Upon receipt of Judge Fenn's order, Bar Counsel filed a petition for Respondent's interim suspension. On September 12, 2012, the Wyoming Supreme Court issued an order of interim suspension of Respondent, effective September 21, 2012.

32. Respondent's conduct as set forth above violated the following Rules of Professional Conduct:

    a. Rule 804(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

    b. Rule 804(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

    c. Rule 804(d), which provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

33. Respondent has one prior discipline, an Order of Public Censure Upon Consent dated July 16, 1996, which stemmed from Respondent's 1995 plea of guilty to a charge of unlawful possession of a Schedule II narcotic, Percodan, in violation 21 U.S.C. § 44(a).

34. By Resolution Order dated November 16, 2012, Respondent was ordered by the Committee on Resolution of Fee Disputes, Wyoming State Bar, to refund the unearned portion of a retainer to a client in the amount of $5,101.67. Respondent has not complied with that order.

10

## CONCLUSIONS OF LAW

35.     The Wyoming Rules of Professional Conduct provide, "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs."

36.     The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

37.     ABA **Standard 3.0** lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct:

> (a) the duty violated;
> (b) the lawyer's mental state;
> (c) the potential or actual injury caused by the lawyer's misconduct; and
> (d) the existence of aggravating or mitigating factors.

38.     Respondent's misconduct falls within the heading "Violation of Duties Owed to the Public," more specifically, "Failure to Maintain Personal Integrity" (Standard 5.1):

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit or misrepresentation:
>
> 5.11     Disbarment is generally appropriate when:
> > (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of any other commit any of these offenses; or

11

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously reflects on the lawyer's fitness to practice.

5.13 Reprimand [in Wyoming, public censure] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

5.14 Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

22. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

23. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

9.3     *Mitigation.*

9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32    *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:
  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
  (2) the chemical dependency or mental disability caused the misconduct;
  (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
  (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4     *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure of injured client to complain.

24. In Respondent's case, the following aggravating factors are present: (a) dishonest or selfish motive; (b) a pattern of misconduct; (c) multiple offenses; (d) substantial experience in the practice of law; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the Disciplinary Code; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution.

25. The following mitigating factor is present: (m) remoteness in time of a prior disciplinary record.

## RECOMMENDATION

WHEREFORE, the Board of Professional Responsibility recommends that the Wyoming Supreme Court:

1. Issue an Order disbarring Respondent;

2. Order Respondent to reimburse the Wyoming State Bar for all costs and expenses of prosecuting this matter and for the disciplinary proceeding;

3. Order Respondent to make restitution to Sergei S. Yates in the amount of any and all judgments.

4. Order Respondent to comply with the November 16, 2012, Resolution Order of the Committee on Resolution of Fee Disputes.

14

DATED this 21st of December, 2012.

BOARD OF PROFESSIONAL RESPONSIBILITY OF
THE WYOMING STATE BAR

By_____
Jenifer E. Scoggin, Chair

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was served upon Respondent this 21st day of December, 2012, by United State mail, first class postage prepaid and correctly addressed as follows:

Jody Montgomery Vannoy
P.O. Box 3220
Cody, WY 82414-3220
Respondent

Robert Joseph DiLorenzo
P.O. Box 27
Emblem, WY 82422
Complainant in WSB No. 2011-67

Nick Edward Beduhn
Goppert, Smith & Beduhn
1309 Sheridan Ave.
P.O. Box 880
Cody, WY 82414-0880
Complainant in WSB No. 2011-145(b)